IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John C. Troutman, Jr., ) | |
| ) | C/A No. 3:13-1690-MBS |
| Plaintiff, ) | |
| vs. ) | **OPINION AND ORDER** |
| SunTrust Bank; SunTrust Banks, Inc.; ) | |
| SunTrust Investment Services, Inc.; and ) | |
| Financial Industry Regulatory Authority, ) | |
| Inc., ) | |
| Defendants. ) | |

This is a declaratory judgment action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., as well as for injunctive relief. Plaintiff John C. Troutman, Jr. seeks to preclude Defendants SunTrust Bank; SunTrust Banks, Inc.; and SunTrust Investment Services, Inc. (collectively, the "SunTrust Defendants") from pursuing an arbitration action that SunTrust Investment Services, Inc. ("SunTrust Investment") has filed against Plaintiff with the Financial Industry Regulatory Authority, Inc. ("FINRA").

I. FACTS

By letter dated September 23, 2009 (the "offer letter"), Plaintiff was offered a position with SunTrust as Private Financial Advisor in the Georgia Region of Wealth and Investment Management. The offer letter recited a base salary of $24,000 annually, a monthly guaranteed draw, the opportunity to earn commissions, and incentive compensation in the form of a Signing and Retention Bonus of $100,000 to be processed within his first thirty days of employment. The offer letter noted that the Signing and Retention Bonus was advanced in anticipation of Plaintiff's

remaining with SunTrust for at least sixty months from his start date. The offer letter stated that, for each month Plaintiff remained employed with SunTrust after the effective start date, 2.78% of the gross amount of the Signing and Retention Bonus would be forgiven.[1] The offer letter further provided:

> However, if you voluntarily terminate your employment . . . or you are involuntarily terminated before the entirety of any repayment obligation has been "forgiven," you will be required to reimburse SunTrust for the outstanding portion of the gross amount owed, due and payable within 50 days from the date of the termination of your employment including all expenses it incurs, including attorneys' fees, in connection with the collection of any outstanding indebtedness due under these terms and conditions. . . .

ECF No. 1-1, 2.

The offer letter also informed Plaintiff that he was required to obtain FINRA Series 8, 64, 65, or 66 and state insurance licenses within a certain period after commencement of employment or face termination. Plaintiff accepted the offer of employment by affixing his signature to the letter on September 23, 2009.

With respect to his FINRA registration, Plaintiff completed a Form U4 - Uniform Application for Securities Industry Registration or Transfer. See ECF No. 12-2. The Form U4 shows under "12. EMPLOYMENT HISTORY" that Plaintiff was employed as a Private Financial Advisor by SunTrust Bank, a noninvestment-related business, as of September 2009; and SunTrust Investment Services, Inc., an investment-related business, as of October 2009. ECF No. 12-2, 9. The Form U4 further shows in "4. SRO REGISTRATIONS" that Plaintiff requested Full Registration/General Securities Representative with FINRA. ECF No. 12-2, 3. Of relevance to the

---

[1] It appears that the forgiveness rate was miscalculated. The actual forgiveness rate is 1.67% for each month worked. Thus, the SunTrust Defendants seek repayment of the full amount owed of $59,475.50. See ECF No. 1-5, 2.

within action, paragraph 5 of "15A. INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT" provides:

> 5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.

ECF No. 12-2, 19.

Plaintiff executed the Form U4 on October 9, 2009. ECF No. 12-2, 20. The Signing and Retention Bonus was paid to Plaintiff on or about October 15, 2009. ECF No. 12-3, 1.

Plaintiff resigned his employment with SunTrust Investment on or about July 29, 2011. ECF No. 12-4. On August 31, 2011, the Collections Recovery Unit of SunTrust Banks, Inc. issued a letter to Plaintiff reminding him of his "remaining financial obligations to SunTrust pursuant to the terms and conditions set forth in the letter offering you employment with SunTrust ('Offer Letter')." ECF No. 12-7. Plaintiff was informed that, "[b]ecause you resigned 22 months from your start date, you are obligated to repay to SunTrust Bank $36,923.64 which represents 38.84% of the amount of your signing bonus less applicable taxes withheld by the Bank." Id. Additional attempts to collect $36,923.64 were made on February 10, 2012, March 16, 2012, and July 31, 2012. ECF No. 12-7, 10-17. Plaintiff responded to SunTrust Banks, Inc. through counsel by letter dated August 13, 2012. In the letter, Plaintiff disputed the obligation because (1) he had been misled regarding the position and expectation of income, such that his career and reputation had been damaged; and (2) the Signing and Retention Bonus had been received with an understanding that there is no repayment obligation because the termination was not the fault of Plaintiff. Plaintiff contended SunTrust placed

3

him in an untenable position that resulted in a constructive discharge. ECF No. 1-4.

It appears that the parties attempted to resolve the matter informally. However, on or about May 3, 2013, SunTrust Investment sought arbitration through FINRA as provided for in the Form U4. ECF No. 1-6, 9. FINRA notified Plaintiff by letter dated May 14, 2013 that he was required to file a statement of answer in response to SunTrust Investment's claim on or before June 3, 2013. ECF No. 1-6, 1. Plaintiff protested that he had not agreed to arbitrate the dispute. According to Plaintiff, FINRA verbally advised Plaintiff's counsel that Plaintiff was required to raise the issue to an arbitration panel after agreeing to arbitrate and filing a statement of answer on the merits. ECF No. 1, ¶ 15.

Plaintiff filed the within action for declaratory judgment on June 20, 2013, seeking to preclude the SunTrust Defendants from pursuing the arbitration action initiated by SunTrust Investment. The gravamen of Plaintiff's claim is that he was recruited by SunTrust Bank; that the offer letter was issued by SunTrust Bank; that the offer letter did not contain an arbitration provision; that the agreement to arbitrate pertained to any disputes that may have arisen between him and SunTrust Investment; and that he is not obligated to arbitrate the claim for a refund of the Signing and Retention Bonus because there is no arbitration clause contained in the offer letter from SunTrust Bank.

## II. DISCUSSION

This matter is before the court on motion to dismiss filed by the SunTrust Defendants on July 17, 2013, to which Plaintiff filed a response in opposition on August 5, 2013. The SunTrust Defendants contend that SunTrust Investment employed Plaintiff for the entire term of his employment, that the Signing and Retention Bonus was paid by SunTrust Investment, and the

litigation involving repayment of the Signing and Retention Bonus properly is before the arbitrator. The SunTrust Defendants contend that any defenses or counterclaims Plaintiff intends to assert relating to his recruitment by SunTrust Bank should be asserted against SunTrust Investment during the arbitration proceedings. The court agrees.

The FAA provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Thus, the court must decide (1) whether there existed a valid, enforceable agreement to arbitrate, and (2) whether Plaintiff's claims fall within the scope of that agreement. Choice Hotels Int'l, Inc. v. Chewl's Hospitality, Inc., 91 F. App'x 810, 814 (4th Cir. 2003) (citing Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999)). Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. AT&T Techs., Inc. v. Comm'ns Workers of Am., 475 U.S. 643, 649 (1986) (citing cases). In this case, the court discerns no language in the arbitration clause manifesting the parties' clear intent to arbitrate arbitrability. Therefore, the court turns to the question of whether the parties agreed to arbitrate.

Plaintiff executed the Form U4 as a condition of his employment. The signing of a Form U4 is a standard practice in the investment industry. See, e.g., Simmons v. Morgan Stanley Smith Barney, LLC, 872 F. Supp. 2d 1002 (S.D. Cal. 2012); Flowers v. Wells Fargo Advisors, LLC, No.

7:12-CV-00052-BR, 2013 WL 361106 (E.D.N.C. Jan. 30, 2013); Blackwell v. Bank of America Corp., C/A No. 7:11-2475-JMC-KFM, 2012 WL 1229673 (D.S.C. March 22, 2012); Martyn v. J.W. Korth & Co., No. 1:11-CV-407, 2011 WL 2144618 (W.D. Mich. June 1, 2011). By executing the Form U4, Plaintiff consented to arbitration of disputes, claims, or controversies between him and SunTrust Investment. The court concludes that a valid arbitration agreement exists. Indeed, Plaintiff does not dispute the validity of the arbitration provision at issue. Rather, he contends that his dispute is with SunTrust Banks, which entity is not a member of FINRA and not to the Form U4.

To address Plaintiff's argument, the court must determine the scope of the arbitration clause. Determining whether a particular dispute is subject to arbitration requires the court to interpret the agreement between the parties. See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). When construing an arbitration clause, the court must "'give effect to the contractual rights and expectations of the parties.'" Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010) (quoting Volt Information Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 479 (1989)). Arbitration is a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 524 (1985) (quoting Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)).

Plaintiff was paid the Signing and Retention Bonus after he complied with the terms and conditions of the offer letter, as provided for in the offer letter. ECF No. 12-1, 1. Plaintiff received

the Signing and Retention Bonus from SunTrust Investment. ECF No. 29-4.[2] The dispute regarding repayment of the Signing and Retention Bonus is a "dispute, claim or controversy" arising between Plaintiff and SunTrust Investment that is required to be submitted to arbitration pursuant to FINRA Rule 13200. Plaintiff may specify defenses and include counterclaims against SunTrust Investment, as well as include cross claims against other respondents or third party claims. FINRA Rule 12303. Plaintiff's position that he is not required to repay any portion of the Hiring and Retention Bonus is related to and intertwined with the claim submitted to arbitration by SunTrust Investment. SunTrust Investment's submission of the repayment dispute to arbitration cannot be fully resolved without addressing Plaintiff's assertion that he was misled into entering employment and thereafter constructively discharged. The court concludes that the parties' dispute regarding repayment of the Signing and Retention Bonus should be submitted to arbitration. Cf. Fisher v. Wheat First Securities, Inc., 62 F. App'x 472 (4th Cir. 2003).

### III. CONCLUSION

For the reasons stated, the SunTrust Defendants' motion to dismiss (ECF No. 12) is granted, without prejudice.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
October 16, 2013.

---

[2] Plaintiff contends that the SunTrust Defendants have failed to establish SunTrust Investment paid the Signing and Retention Bonus. In response, the SunTrust Defendants have provided a Quitclaim and Assignment Agreement in which SunTrust Banks, Inc.; SunTrust Bank; and SunTrust Investment Services, Inc., "intending to be legally bound," state that SunTrust Investment paid the Signing and Retention Bonus to Plaintiff and was his employer. ECF No. 29-4.